# WILLIAM S. BRYAN, Appellant,· v. THOMPSON PUBLISHING COMPANY.

### Division Two, May 26, 1914.

1. **CONTRACT: To Share in Profits: Suit for Partition of Stock.** Where plaintiff entered into a contract with a publishing company by which it was agreed "that the cash profits shall be divided between us in proportion of one-third" to plaintiff and two-thirds to the publishing company after all the original expense for plates and electros were paid, and "that the profits shall be reckoned on the basis of cash, and not that of stock, and that the stock until such profits are made and declared shall be the property" of the publishing company, and plaintiff's "connection and interest therein is to be one of profit-sharing simply," plaintiff is not entitled, after the initial costs of the publication have been paid, to maintain a suit for a partition between himself and said publishing company of its books, electros and plates on hand, or the copyright which the company was authorized to take out in its own name, either before said company made an assignment in bankruptcy or after the trustee sold its assets to said company. Plaintiff's interest is in the profits arising from the sales, and not in the stocks.

2. ――――: ――――: **Partition: No Ownership.** There can be no partition of personal property or choses in action in the absence of ownership by plaintiff; and a plaintiff, who as author, was to share in the cash profits arising from the publication and sales of a book, and not in the stocks of books, plates and electros, although the costs of the plates and electros were to be deducted as an initial expense before plaintiff was to share in the cash profits, has no ownership in said stocks, etc.

3. ――――: ――――: **Joint Ownership: Pleading.** And where the facts pleaded show that plaintiff was to share in the cash profits only, an allegation that he is a joint owner in the stock is a mere conclusion of law, and cannot be held to state a cause of action for partition.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*S. T. G. Smith* and *Thomas S. Meng* for appellant.

(1) Partition of personal property is authorized by statute. R. S. 1909, secs. 2619-2621. (2) A general allegation of joint ownership of the personal property sought to be partitioned is sufficient on demurrer. Bank v. Ragsdale, 158 Mo. 681; Hayes v. McReynolds, 144 Mo. 348. (3) The bankruptcy and insolvency of the Publishing Company rendering further performance of the contract impossible, constituted a breach of the contract on its part. 9 Cyc. 641. This necessitated a distribution of the property on hand as part of the profits in the proportion provided for in the contract.

*Ferriss, Zumbalen & Ferriss* for respondent.

(1) Under the contract pleaded plaintiff did not, at any time, become a joint owner of said plates, dies, copyright, stock, etc., and hence cannot maintain a suit to partition them. The allegation of joint ownership is simply a conclusion based upon the preceding facts and is completely disproved by them. (2) A copyright cannot be partitioned. Sec. 2620, R. S. 1909; Stephens v. Cady, 14 How. (U. S.) 528; Stephens v. Gladding, 17 How. (U. S.) 448; Ager v. Murray, 105 U. S. 126. (3) Even if a joint owner, defendant has a complete right to use and enjoy the common property and need not account to plaintiff for the proceeds of that use. 17 Am. & Eng. Ency. 692; In re Tyler, 40 Mo. App. 378; Lilly v. Menke, 126 Mo. 218; Starks v. Kirchgraber, 134 Mo. App. 211; Carter v. Bailey, 64 Me. 458; Note, 28 L. R. A. 829.

WALKER, P. J.—A general demurrer was sustained to the petition filed herein, plaintiff refused to

plead further, an order of dismissal was entered, and an appeal perfected to this court.

Following a formal allegation as to the corporate character of the defendant, the body of the petition is as follows:

"That in the year 1899 plaintiff entered into a contract with N. D. Thompson Publishing Company, a corporation, relating to the production of a publication known as 'Our Island Possessions.' That it was agreed by and between plaintiff and said Publishing Company that plaintiff should write the matter for this publication, attend to its illustration, proof reading, and see it through the press, and that every expense pertaining thereto should be charged to the publication, and that after such expense had been deducted the profits arising from the publication should be divided between plaintiff and said Publishing Company in the proportion of one-third to plaintiff and two-thirds to the said Publishing Company. That the agreement between him and said Publishing Company was evidenced by a certain letter of date March 29, 1899, signed by N. D. Thompson on behalf of said Publishing Company, as follows:

"W. S. Bryan, Esq., City.

"Dear Sir:. In our several conversations concerning the production of 'Our Island Possessions,' a serial publication to be completed in twenty-four or thirty-two parts, it has been agreed that every expense pertaining thereto shall be charged to the publication, which expense includes your salary as heretofore arranged, with that of such help as you may employ, and after this and the expenses of every kind have been deducted, that the cash profits shall be divided between us in the proportion of one-third to you and two-thirds to me, or the N. D. Thompson Publishing Company.

"It is understood that the profits shall be reckoned on the basis of cash, and not that of stock, and that the stock, until such profits are made and declared, shall be the property of the N. D. Thompson Publishing Company. Your connection and interest therewith is to be one of profit-sharing simply, on the conditions above named.

"It is further understood that you will give your time and energies to it, and to such other business as you may have in

connection with our publishing business, except such time as is devoted to editorial work which you have and are doing for the Democrat and Journal of Agriculture.

"It is understood that you will write the matter fŏr the new publication, viz, 'Our Island Possessions,' and attend to its illustration, its proof reading; and that you will see it through the press. It is further understood, of course, that we will work together with the necessary resources at our command for a successful and profitable business on this publication.                    Respectfully yours,
                                           "N. D. THOMPSON.

"Accepted:    W. S. BRYAN.

"Plaintiff states that he entered upon the performance of said agreement between himself and said Publishing Company, and fully complied with said agreement on his part. That in pursuance of said agreement, said Publishing Company caused to be made certain plates, dies and electros for the printing of said publication, and complied with the acts of Congress relating to copyrights, whereby said Publishing Company became entitled to the copyright for said publication, subject to the rights of plaintiff therein. That said publication was issued and printed and sold by said Publishing Company under the title of 'Our Islands and Their People, as Seen With Camera and Pencil.' That hundreds of thousands of volumes of said publication were issued, printed and sold by said Publishing Company, and that it received from such sales about one million dollars.

"That in the year 1903 plaintiff instituted suit in the circuit court of the city of St. Louis against said Publishing Company for an accounting under said agreement, and to recover his share of the profits arising from said publication. That in said cause a judgment was rendered January 22, 1906, in favor of plaintiff and against said Publishing Company, for the sum of $7,715.35, as plaintiff's share of the profits of said publication up to June 30, 1903.

"Plaintiff states that in the year 1905 the said Publishing Company was duly adjudicated a bankrupt

under the acts of Congress, and that James W. Graves was appointed trustee of its estate. That plaintiff duly exhibited and filed with the referee in bankruptcy his claim for the profits accruing due to him under said agreement for the production of said publication up to the date of the adjudication in bankruptcy, and said claim was duly allowed. That by said adjudication all the assets of said Publishing Company passed to the trustee appointed in said proceeding. That all of said assets remaining after cost of administration were distributed pro rata to creditors of said Publishing Company, and were insufficient to pay its proved indebtedness. That since the date of the adjudication in bankruptcy said Publishing Company has ceased doing business and has no assets.

"That in the accounting between plaintiff and said Publishing Company to determine the amount due the plaintiff under the aforesaid agreement, upon which said judgment and the allowance in his favor were based, there was charged against the publication the entire cost of the plates, dies, electros and the printed book stock on hand, up to the close of said accounting, and that the profits in which plaintiff was allowed to share, and for which he obtained said judgment and allowance, were determined after the deduction of all such charges. That the entire cost of said plates, dies, electros and printed book stock and of obtaining the copyright for said publication, were paid out of the receipts from sales of said publication.

"That in the administration of the estate of said Publishing Company in bankruptcy, the trustee thereof sold all the right, title and interest of said bankrupt estate in and to the copyright of said publication known as 'Our Islands and Their People,' and also in and to the said plates, dies and electros intended for use in the publication of the same, and the said book stock on hand. That at the time of such sale there was in the possession of said trustee in bankruptcy

one original set of plates complete, three sets of electro plates and dies complete, and two thousand printed volumes of said publication. That the interest of said bankrupt estate in all of said property was sold to John Bermel, and said property was delivered by said trustee in bankruptcy to said John Bermel or the Thompson Publishing Company, the defendant herein. That in the purchase of said property the said John Bermel was acting for and on behalf of said defendant, and that if possession of the same was delivered to him it was immediately, or within a few days thereafter, delivered to defendant. That both said John Bermel and said defendant had full notice of the agreement between plaintiff and said Publishing Company as hereinbefore set out and of plaintiff's interest in said publication and in said copyright, plates, dies and other property.

"That the interest formerly held and owned by said Publishing Company in said copyright, plates, dies, book stock and other property was sold and transferred to defendant, either directly by said James W. Graves, as trustee in bankruptcy, or by an intermediate transfer from said John Bermel.

"That defendant still has in its possession said original set of plates for said publication; that plaintiff has no knowledge or information sufficient to form a belief as to whether or not defendant still has in its possession said three sets of electro plates and dies for said publication, and said two thousand printed volumes of said publication, but plaintiff states that defendant either has the same in its possession or has sold the same and received the proceeds thereof. That said sets of plates, electro plates and dies cost and are of the value of thirty thousand dollars, and said two thousand printed volumes were and are of the value of $2,500, and said copyright is of the value of more than $20,000.

"That said original set of plates, and such of said electro plates and dies and said printed books as are now in the possession of defendant, and the copyright for said publication are owned by plaintiff and defendant jointly, plaintiff being entitled to an undivided one-third interest therein, and defendant to an undivided two-thirds interest therein.

"That since defendant acquired the interest of said Publishing Company in said copyright, plates, dies and other property, it has used the same in its business, and has continued to print, issue and sell additional copies of said publication under said copyright printed from said dies and plates. That plaintiff does not know the amount of business so done by defendant or the number of copies of said publication so printed or sold by it.

"That the nature of the property hereinbefore described is such that partition in kind cannot be made thereof without great prejudice to the owners thereof.

"Wherefore, plaintiff prays that partition may be made between plaintiff and defendant of the property hereinbefore described as being owned by them jointly, and that the same may be ordered sold and the proceeds divided between plantiff and defendant, according to their respective interests therein; that an accounting may be had to determine the value of such of said property as has been used, sold or disposed of by defendant, and that judgment may be rendered in favor of the plaintiff and against defendant for the value of his interest in such property; that an accounting may be had as to the number of volumes of said publication issued, printed and sold by defendant under said copyright and from said plates and dies, and that judgment may be rendered in favor of plaintiff and against defendant for the amount of plaintiff's interest in the proceeds of such sales; and that an accounting may be had as to the use made by defendant

of said copyright and other property so owned by plaintiff and defendant, and that plaintiff may have judgment against defendant for his proportionate part of the receipts obtained by defendant therefrom. Plaintiff further prays for all other and further relief, which to the court may seem meet and proper.''

I.  Reference must be had to the terms of the contract, the tenor of which is set forth in the petition, in determining whether or not a cause of action has been stated. A brief statement of the contract in more familiar words than are ordinarily used in such instruments may assist in the solution of this question. Plaintiff and the N. D. Thompson Publishing Company entered into the contract to publish and sell a publication entitled ''Our Island Possessions.'' Plaintiff was to write the matter, attend to its illustration, and proof reading, and see it through the press. During this time he was to be paid a salary by the Publishing Company, and when the publication was sold he was to receive one-third of the net profits arising from the sale. The Publishing Company was to perform all the necessary mechanical work, and, although it is not so expressly stated, it follows as a necessary inference that it was to bear all the expenses incident to preparing the work for·sale. When the publication had been sold all the expenses incident thereto were to be deducted from the funds arising from the sale before any profits were declared.

Plaintiff's relation to the agreement so far as its legal aspect is concerned is best defined in the language of the contract itself, to-wit:

''That the cash profits shall be divided between us in the proportion of one-third to you and two-thirds ·to me, or the N. D. Thompson Publishing Company.

''It is understood that the profits shall be reckoned on the basis of cash, and not that of stock, and that

the stock until such profits are made and declared shall be the property of the N. D. Thompson Publishing Company. Your connection and interest therewith is to be one of profit sharing simply, on the conditions above named.''

The meaning of the foregoing words is to our mind unmistakable, and a prolix discussion of cases presenting similar facts in support of the conclusion we have reached herein would serve no useful purpose in that they would not make more clear that which is already as clear as words may be used to convey thought.

Plaintiff's interest, therefore, in the contract, is no greater than that defined by its terms, namely, that of a profit-sharer. This is evident from the fact that the Publishing Company assumed all the expenses incident to the publication of the work for sale, which it was enabled to do by reason of its being a going concern equipped with type, type machines, compositors, presses, book stock and other requisites of the publishing business; while plaintiff was only equipped with his ability and experience and did not even contribute his time to the uncertainties of the venture, but was paid a salary by the Publishing Company during the performance of the work upon the publication, and was accorded the privilege of hiring assistants, his additional compensation being dependent upon whether or not the publication was a profitable investment. If it did not so prove, then his compensation was limited to the salary agreed upon. That he construed the contract as only giving him a share in the profits is evident from the fact that after the publication had been put upon the market, the expenses paid, and a certain amount of profits made thereon, upon a failure of the Publishing Company to adjust same, he brought suit against it, and recovered judgment in the amount of his proportion of the profits proved to have been earned up to June, 1903. As a further evidence that

he so construed the contract, when the Publishing Company became bankrupt in 1905, he made proof before the referee of his claim in the amount of his profits to that date, and the same was allowed, and he asserted no claim to the•property, although it is evident from all the other facts that he knew it had been surrendered by the bankrupt as a part of its assets. We refer to this matter, not as showing that plaintiff would not on account of such a course be entitled in a proper manner to assert ownership in the property in question, if authorized by the contract, but not being so authorized, it is at least persuasive evidence that no other construction was placed thereon by either party until the institution of this suit. Prior thereto there was certainly no claim of ownership in the property on the part of plaintiff, and the fact that the Publishing Company became insolvent did not change the terms of the contract, or, in any way, affect the relations of the parties thereto. The mere allegation in the petition that the plaintiff is a joint owner of the property is nothing more than a mere conclusion and must, as is contended by the respondent, be measured by the other allegations in the petition. Thus measured we find that it is simply an unsupported declaration of ownership which is attempted to be based upon a contract which only authorizes a sharing in the profits.

The allegation that the individual purchaser of the property in question at the bankrupt sale of the assets of the N. D. Thompson Publishing Company and the defendant corporation, which afterwards acquired ownership of same, were familiar with the terms of the agreement between the plaintiff and said Company, avails plaintiff nothing because said contract discloses no ownership of the plaintiff in said property, nor contains any terms upon which a well founded claim of ownership can be based which would affect the title acquired by defendant.

Partition is asked.  It cannot be decreed in the absence of ownership; this we hold under the allegation of the petition does not exist in the plaintiff.

Absent ownership, with the added fact that plaintiff made a claim to his share of the profits up to the date of the adjudication in bankruptcy and same was allowed, there is no ground for an accounting.

As we construe the pleading, the copyright was taken out by the N. D. Thompson Publishing Company, and the ownership of same being now in the defendant, the question as to whether or not it may be partitioned is immaterial.  Holding as we do that there was no joint ownership, a discussion as to the rights arising therefrom is unnecessary.

We are, therefore, of the opinion that the trial court ruled properly in holding that the petition did not state a cause of action.  The judgment of the trial court is, therefore, affirmed.  It is so ordered.

*Brown* and *Faris, JJ.,* concur.